Earle, J.,
dissenting. Nothing can be better settled, or more generally understood, than the distinction between original and collateral undertakings, with reference to the Statute of frauds. Where the debt of the third person alleged to be assumed, has previously existed, it is not difficult to determine the liability of the person making the guarantee, for it must be in writing, unless the former debtor be discharged. But where the debt is incurred at the same time that the promise is made, as in this instance, the liability of the promissor becomes a mixed question of law and fact. Had Bronson sold the hogs to Henning, and taken his note before the defendant’s promise to sign with him, it would clearly have been a case within the Statute. But the whole was a simultaneous transaction. The defendant said, “let Henning have the hogs, and I will go in a note with him for the amount.” It is not an undertaking to pay if Henning should not; it is not a promise that they will jointly pay. It is a promise that he will do an act, which, when done, would have bound him at once for the whole debt. I cannot agree, therefore, that by force of its express terms, the undertaking was to become Henning’s security merely ; or that by any necessary implication the *380 credit was given to Henning, or given to both of them jointly. For when the plaintiff refused to let Henning have the hogs until defendant undertook, he furnished an equal ground to believe that the credit was given wholly to the defendant. There was no joint undertaking at all, and when the plaintiff took Henning’s note, he did not thereby manifest that he gave credit to Henning alone, or jointly with the other, because he cannot otherwise claim from the defendant the performance of his engagement. When he retained the note, and accepted payment of part from Hen-ning, he was doing what he well might do, using Henning’s direct engagement in writing to pay him the money, given, it is true, after the defendant’s undertaking, but certainly not superseding it. At the utmost, it was a case in which the question of liability depended clearly upon this — to whom was the credit given in the first instance 1 and this was properly for the decision of the jury, to whom it was submitted. The rule, as extracted from the English cases, is thus expressed in 2 Leigh’s N. P., 1025. — “ It is a question for the jury in such cases, whether credit was given to the defendant before the debt was incurred, or to another as the principal, taking all the circumstances of the case into consideration,” Such was the course pursued in Keate vs. Temple, 1 B. & P., 157, where a lieutenant in the navy was sued for clothes furnished the crew of his vessel, by a slop seller, on this promise, “ I will see you paid at the pay table; are you satisfied 1” There was a verdict for the plaintiff, and although the court granted a new trial (a non-suit was not thought of,) it was upon the circumstances of the case which it was thought ought to be submitted to another jury. So in Darnell vs. Tratt, 2 Carr. & Pay., 82; an action by a school-master against an uncle for the schooling of his nephew, carried to the plaintiff’s school by the boy’s mother, without any instructions as to who was liable. The defendant, when the bill was sent to him, said, “ quite right, I am answerable.” The Chief Justice left the question to the jury, as to whom the credit was given. In Storr et al. vs. Scott, 6 C. & P., 241, in the same kind of case, where the defendant, as steward of certain races, selected at the shop of the plaintiff a gold cup, saying, “you must send the cup as usual, I suppose, to the *381 clerk of the course,” which had been frequently done by the plaintiff before, Lord Lyndhurst said to the jury, “the question is, upon whose credit the cup was furnished and left it to them to say, whether the credit was to be given to the defendant, or to the clerk of the course. In Leland vs. Creyon, 1 McC., 100, where the court ordered a nonsuit, the goods were not only charged to a third person on the plaintiff’s books, but there was no promise by the defendant at all, and the attempt was made to charge him, by a memorandum on the books, made by the plaintiff himself several days after the delivery of the goods. It cannot be doubled that the defendant would have been liable upon his undertaking to accept a bill, 15 E. C. L. R. 45; or to give his own note; or I should say, also, upon his promise to endorse Henning’s note, to be afterwards procured, if the article was delivered upon the credit of this promise. I cannot perceive that it makes any difference that it was a promise to sign a note with the other, if the credit was given solely to him on the faith of that promise. I admit fully, that the Statute was intended to include every case of mere surety, whether the agreement to be answerable was collateral to a previous liability of the principal, or concurrent, and made at the same time with some promise or agreement creating a liability of such principal debtor. But I think there is quite enough here to sustain the verdict establishing that there was no credit actually extended to Henning, and that the hogs were delivered on the credit of the defendant.